IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NESTOR DAVID HERNANDEZ HERVERT, | § § § | |
| Petitioner, | § § | |
| v. | § § | 1:25-CV-1763-RP |
| PAMELA BONDI, *in her official capacity as Attorney General of the United States*, et al., | § § § § | |
| Respondents. | § § | |

### ORDER

Before the Court is Petitioner Nestor David Hernandez Hervert's ("Petitioner") Petition for Writ of Habeas Corpus, filed October 31, 2025. (Dkt. 1). On November 4, 2025, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 4). On November 7, 2025, Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and Sylvester Ortega, all sued in their official capacities, (together, "Respondents") filed a response in opposition to the petition.[1] (Dkt. 5). On November 11, 2025, Petitioner filed a reply. (Dkt. 6). Having considered the parties' arguments in the briefs and at the hearing, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

### I. BACKGROUND

Petitioner is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 1). Petitioner has resided in the United States for more than 20 years. (*Id.*). He entered the United States without inspection or admission in 2005. (Resp., Dkt. 5, at 2.). He is currently detained

---

[1] Respondent Charlotte Collins, in her official capacity as Warden of T. Don Hutto Detention Center, did not file a response.

1

by Respondents pending removal proceedings. (*Id.*). Specifically, Respondents assert that Petitioner is being detained under "mandatory detention" authority for aliens who are in the process of entering the United States, 8 U.S.C. § 1225. (*Id.* at 3–4; *see also Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)). On that basis, an Immigration Judge denied Petitioner's request for a custody bond redetermination—asserting a lack of authority to hear Petitioner's bond request under *Matter of Yajure Hurtado*. (Pet., Dkt. 1, at 7).

Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner brings claims that his ongoing detention without bond is unlawful in violation of his Fifth Amendment Due Process rights, the Immigration and Nationality Act ("INA"), the Suspension Clause, and the Administrative Procedure Act ("APA"). (Pet., Dkt. 1, at 22–27). In his Reply to Respondents' Response, Petitioner focuses on the as-applied statutory claim that his detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225, and that both § 1226 and Due Process require that he receive a bond hearing. (Reply, Dkt. 6, at 7, 8-11, 17-19).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Respondents argue that because Petitioner challenges his detention pending removal proceedings, this Court is stripped of jurisdiction to review his challenge under the jurisdiction stripping provisions of the INA. They assert 8 U.S.C §§ 1252(b)(4), (b)(9), (g), and (e)(3) as potential bars to this Court's jurisdiction. (Resp., Dkt. 5, at 10–12). The Court evaluates each in turn.

First, 8 U.S.C. § 1252(b)(9) channels "[j]udicial review of all questions of law . . . including interpretation of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals—here the Fifth Circuit. However, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal;" "challenging the decision to detain them in the first place or seek removal," or

2

"challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Petitioner's challenge to his continued detention without bond as unlawful under the INA, APA, and U.S. Constitution does not fall into any of those categories. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.").

Second, Respondents' invocation of § 1252(b)(4) fails to assert a valid jurisdictional bar for the same reasons. Under 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal," Subsection (a)(1) indicates that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b)." *See* 8 U.S.C. § 1252(a)(1). Section 1252(b) generally, and (b)(4) specifically, elaborates on "requirements for review of orders of removal" as set forth in Subsection (a)(1). Because Petitioner does not assert a challenge to an order of removal, nothing in that subsection bars Petitioner from seeking relief from his continued detention in this case.

Third, 8 U.S.C. § 1252(g)—unless other laws provide jurisdiction—strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, as interpreted by the Supreme Court, this Section applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Thus, § 1252(g) does not apply to all claims with any relationship to deportation proceedings. Because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal

3

proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" that § 1252(g) applies to. *Reno*, 525 U.S. at 482.

Finally, 8 U.S.C. § 1252(e)(3), as its title states, governs jurisdiction for "[c]hallenges on validity of the system." Section 1252(e)(3) states that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia." 8 U.S.C. § 1252(e)(3)(A). The section then limits such review to the questions of "whether [§ 1225], or any regulation issued to implement [§ 1225], is constitutional" or whether "a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement [§ 1225], is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A)(i)-(ii). Respondents contend that the interpretation of § 1225(b)(2) that they rely on to justify Petitioner's detention without bond is a "determination, set forth in writing by both the Department of Justice and DHS," and therefore that Petitioner's challenge to that interpretation is barred. (Resp., Dkt. 5, at 10-11).[2]

However, Petitioner is not bringing a "challenge[] on the validity of the system"—this is not a "systemic" challenge. *See* 8 U.S.C. § 1252(e)(3); *see also Shunaula v. Holder*, 732 F.3d 143, 147 (2d Cir. 2013) (describing "the exception created by § 1252(e)(3) as being "for 'systemic' challenges to the expedited removal process."). Instead, as other courts have recognized in similar settings, this is an

---

[2] In addition to the nature of Petitioner's challenge, discussed below, there are reasons to be skeptical of the invocation of § 1252(e)(3) here. First, multiple courts have described that provision—in line with the longstanding understanding of § 1225—as applying only to "the expedited removal process." *See Shunaula*, 732 F.3d at 147; *Rodrigues v. McAleenan*, 435 F. Supp. 3d 731, 737 (N.D. Tex. 2020) (holding of § 1252(e)(3) to apply to "any regulation implementing the expedited removal procedures of § 1225(b)"); *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1101 (9th Cir. 2019), *rev'd on other grounds and remanded sub nom. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 S. Ct. 1959, 207 L. Ed. 2d 427 (2020). Respondents here do not assert that Petitioner is subject to expedited removal. (*See* Resp., Dkt. 5, at 4). Second, it is not clear whether the informal, non-published memo that—as far as the Court is aware, is the only documentation of the "policy" interpreting § 1225 as Respondents assert here, and, again as far as the Court is aware, is available only because a photograph of the memo was leaked—is the kind of "written procedure" that the provision requires to be challenged within 60 days of its implementation. *See* § 1252(e)(3)(B).

as-applied challenge, concerned with the specific applicability of § 1225 to Petitioner, not the wholesale system by which the government implements by § 1225. *See, e.g., E.V. v. Raycraft*, No. 4:25-CV-2069, 2025 WL 2938594, at *6 (N.D. Ohio Oct. 16, 2025) ("Accordingly, the Court finds it has jurisdiction to assess Petitioners' *as applied* challenge to the Government's implementation of expedited removal."); *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *10 (S.D.N.Y. Sept. 12, 2025) (similarly finding that § 1252(e)(3) did not bar jurisdiction over a habeas petition challenging ongoing detention without bond under § 1225); *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *6 (W.D.N.Y. July 16, 2025) (incorporating petitioner's "observation" that "1252(e)(3) narrowly applies only to systemic challenges to regulations implementing expedited removal, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention.").[3] As such, Respondents cannot assert a jurisdictional bar to the instant petition.

### B.  Statutory Authority for Petitioner's Detention

At the heart of this dispute are two provisions of the INA: 8 U.S.C. §§ 1225(b)(2) and 1226, the statute's mandatory and discretionary detention provisions. Under § 1225(b)(2), the INA requires mandatory detention for a noncitizen who is either subject to expedited removal under § 1225(b)(1) or—at issue here—an "applicant for admission" who is "seeking admission," where the examining immigration officer determines the individual to not be "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Individuals detained under § 1225(b)(2) receive no

---

[3] Moreover, as another District Court in the Western District of Texas has noted, if § 1252(e)(3) channeled all as-applied challenges to § 1225 detention authority only to the District Court for the District of Columbia, that section would be in conflict with the Supreme Court's recent directive that challenges by detained individuals that "necessarily imply the invalidity of their confinement" "must be brought in habeas" and therefore must be brought in the district of confinement. *Barros v. Noem.*, No. EP-25-CV-488-KC, 2025 WL 3154059, at *3 (W.D. Tex. Nov. 10, 2025) (quoting *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025)).

bond hearing and can only be released on humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1192(d)(5).

By contrast, 8 U.S.C. § 1226(a) provides for the discretionary detention of noncitizens arrested "on a warrant." Section 1226 allows for release on bond and provides "procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an immigration judge and a right to appeal any custody determination." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-479, [2025 BL 349492], 2025 WL 2783642, at *2.

Respondents contend that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted or paroled—regardless of how long such an individual has been present in the country. (Resp., Dkt. 5, at 4-5). This position relies on § 1225(a)(1)'s definition of an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Given this definition, "applicant for admission" would be a broad enough category to include an individual like Petitioner, who was not admitted to the United States, regardless of how long that individual has resided in the United States.

However, 8 U.S.C. § 1225(b)(2) references not just an "applicant for admission," but an "applicant for admission" who is "seeking admission." Multiple courts have read this "seeking admission" requirement to mean a noncitizen present in the United States without admission who *has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country for years. *See Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *see also Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4 (D. Mass. July 24, 2025). In fact, again as noted by multiple courts, reading § 1225(b)(2) as Respondents suggest would make "seeking admission" surplus language that has no effect on the meaning of the

6

provision. *See Martinez*, 2025 WL 2084238, at *6 ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text."); *see also Lopez Benitez*, 2025 WL 2371588, at *6 ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute.").

Similarly, reading § 1225(b)(2) as sweeping so broadly would also eliminate much of the meaning of § 1226: nearly every noncitizen would be subject to mandatory detention, making it unclear why the INA also contains a broadly-worded discretionary-detention provision. *See Lopez Benitez*, 2025 WL 2371588, at *8.[4] It is well established that "[i]nterpretations of statutes and regulations that avoid surplusage are favored." *Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020). As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country.

Respondents cite the Fifth Circuit case *Martinez v. Mukasey*, 519 F. 3d 532 (5th Cir. 2008), for the proposition that "seeking admission" means effectively the same thing as "applicant for admission." (Resp., Dkt. 5, at 5–8). However, the decision in *Martinez* construes the meaning of "admission" and "admitted" in a different provision of the INA—not the question of whether

---

[4] As the United States District Court for the Southern District of New York explained in *Lopez*, "Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application. If, as Respondents contend, anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A) . . . then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply. Perhaps it might still apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully. But there is no indication that Congress intended § 1226 to be limited only to visa overstays. And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach."

"seeking admission" adds anything to the meaning of § 1225(b)(2). As noted above, the statutory definition of "applicant for admission" is broad enough—were it used on its own—to possibly encompass a noncitizen in Petitioner's position. The question is not, then, whether the INA defines "admission" or "admitted" in reference to lawful inspection and entry: it is whether the idea of "seeking admission" adds anything to § 1225(b)(2). Given that reading "seeking admission" to cabin § 1225(b)(2)'s application to recent entrants both avoids reading that language as mere surplusage and allows § 1225(b)(2) to fit more naturally with § 1226, the Court is persuaded by that textual reading.

This reading is further supported by legislative history, recent amendments, and longstanding agency practice. Both § 1225(b)(2) and § 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. The IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention). *See Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025). This dual approach was reflected by the Supreme Court in 2018 in *Jennings*, which did not squarely address the issue in the present case, but framed the distinction between § 1225 and § 1226 as follows:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added).

A recent amendment to the INA reinforces this reading. Earlier this year, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are

8

charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *19 (W.D. Wash. Sept. 30, 2025). The Court is not persuaded by Respondents' assertion that the Laken Riley Act should be read as merely redundant, out of a recognition that "drafters *do* repeat themselves and *do* include words that add nothing of substance." (Resp., Dkt. 5, at 10). What Respondents allege to be mere redundancy is not simple repetition or a few words that add nothing of substance—their allegation is that the entire change that the Laken Riley Act made to § 1226 is effectively meaningless. By contrast, Congress's amendments fit logically into the statute if § 1225 and § 1226 are read as Petitioner suggests.

The interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the United States is also supported by longstanding agency regulations and practice. U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of noncitizens arrested near international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Vasquez*, 2025 WL 2676082, at *15; *Rodriguez*, 2025 WL 2782499, at *24–26.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez,* 2025 WL 2676082, at *9–10. This new agency interpretation was adopted by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

*Matter of Yajure Hurtado* was a departure from the BIA's previous interpretation of the statute. *See Rodriguez,* 2025 WL 2782499, at *5. For example, in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025), a decision from one month before *Matter of Yajure Hurtado*, the BIA applied § 1226 to the detention of a noncitizen who had entered the United States without inspection three years prior. That decision was designated as precedent by the U.S. Attorney General. *See Rodriguez,* 2025 WL 2782499, at *5. Moreover, in an unpublished 2023 decision dealing with the application of § 1225(a)(2) versus § 1226 to a noncitizen already present in the United States, the BIA itself said that it was "unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here." *See id.* at *26. While the BIA's interpretation of the INA is not entitled to any deference by this court under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Matter of Yajure Hurtado*'s inconsistency with prior pronouncements reduces even its "power to persuade." *Loper Bright,* 603 U.S. at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Buenrostro-Mendez v. Bondi*,

No. CV H-25-3726, 2025 WL 2886346, at *3 n.3, (S.D. Tex. Oct. 7, 2025) (collecting cases declining to follow *Matter of Yajure Hurtado* under *Loper Bright*).

District courts across the country have been weighing this new interpretation. Repeatedly, they have found that DHS and BIA's construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citing *Pizarro Reyes*, 2025 WL 2609425, at *4); *see also Lopez-Arevelo*, 2025 WL 2691828, at *7 ("In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."); *Rodriguez*, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases and noting that "[e]very district court to address" the statutory question "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (joining the "chorus" of courts concluding that § 1226 applies).

For the reasons discussed above and cited by other district courts—the statute's text, the statute's history, Congressional intent, and the consistent past application of the statute—the Court concludes that Petitioner is correct that his detention under § 1225(b)(2) is in violation of the INA. Having determined that Petitioner cannot be detained under § 1225(b)(2) and that he is entitled to relief, as described below, for that reason, the Court does not reach Petitioner's constitutional or APA claims.

## IV. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. Either (1) within seven days, Petitioner shall be granted an individualized bond hearing pursuant to 8 U.S.C. § 1226(a), where the necessity of his continued detention is to be determined on the basis of his flight risk or danger to the community (*see Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006) (establishing criteria of danger to community and flight risk as factors for immigration bond requests), or (2) if Respondents do not grant such a hearing, Petitioner shall be released from custody. Respondents are enjoined from detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.

Respondents are **ORDERED** to provide a status report on or before Friday, November 21, 2025 detailing their compliance with this Order.

**SIGNED** on November 14, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE